Robinson, J.
This is a suit brought by the executors of James R. Bissell, who was the owner and proprietor of a certain printing establishment carried on in the city of St. Louis, during the year 1881, under the name and style of the “Times Printing House.”
The defendant is alleged to have been a partner of one John J. Collins, who was a theatrical manager; that prior to the first day of April, A. D. 1881, defendant and said Collins formed and entered into a partnership for the purpose of carrying on a theatrical business in the United States, and this partnership was continued up to March, 1894; that by agreement between defendant and said Collins all the business of said partnership was done and transacted under the name of John J. Collins, who had the control and supervision of the business; that he attended to securing printing, tickets, lithographs,etc., and the furnishing of money and the making of contracts of all kinds, and generally superintended the financial and business part of said undertaking, the defendant contributing his *444 talents and services as an actor to said partnership; that during the months of April, May, June, July,. August, September, October, November, December, 1881, and January, February, March and April, 1882,. said James R. Bissell, at their special instance and request, did work, printing and lithographing for said firm, and furnished tickets and cash to be used in and for said business to the amount of $6,373.91, and that they paid him from time to time,- on account thereof, various sums aggregating $1,306.96 leaving a balance due him from them of $5,056.95; that on January 3, 1887, said Bissell departed this life, leaving a last will and testament, by which the plaintiffs were appointed executors, which will was afterward admitted to probate, etc.; that the balance above stated is now due; that demand therefor was made in the month of April, 1883. Judgment is asked for that sum with interest and costs. An itemized account was filed with the-petition. The answer was a general denial.
On November 22, 1887, the court of its own motion, sent the caseto a referee to try all of the issues. The' case was continued from time to time by the parties, and, finally, at the October term, 1892, the report-of the referee was filed, together with the testimony taken by him.
Charles E. Ware testified that Messrs. Warde and Collins called at the Times Printing House after the work was ordered and together read the proofs of all the work that was being done for them, and Collins spoke of the partnership between him and defendant, and Collins came to the manager of the printing house and persuaded him to go to Bloomington and there he met both Collins and the defendant and advanced them $250 for the printing house. This money was sent to Collins, the manager, for the partnership. “I had never seen any article of copartnership between them *445 •until after this bill was incurred and until after this case came up. The account filed with the petition is a copy of the account from our books. The prices charged were reasonable, or were agreed upon when the goods were sent, and bills were made out and forwarded to Collins, the manager, at various points. When we first began to furnish the work, defendant told me that they had gone into partnership and were going out on a tour; and that he was going to be the coming star for legitimate drama, and that Collins was with him and that he had a five years’ contract. They drew on us; that is, John J. Collins, manager. We advanced in drafts $2,200 and got back $1,186.86. The total balance of the indebtedness is $5,056.56, after deducting the credits, which has never been paid us. Mr. Bissell was proprietor at the time. He is now dead. The defendant was introduced to me by Collins as his partner. He said the contract for partnership was for five years. The account was carried on our books and was headed ‘John J. Collins, for Warde.’ The first time I saw the defendant was when he was brought down by Mr. Collins and was introduced to me as his partner. The first conversation was at this time. The accounts were always sent to Collins, except when I took the account to Bloomington.”
S. S. Bissell testified: “When I first saw the defendant he came in to negotiate for printing with Collins. Collins was manager for defendant at the time; they were partners. Collins brought defendant into our office and introduced him as his partner. I presented an itemized statement to defendant, when he and Collins were together at St. Joseph. We all three talked it over. In the talk in our office Collins said that they were going to star defendant. When I presented the bill at St. Joe, Collins examined it first; then defendant came in, and Collins handed him the *446 bill. Defendant never told me he was interested in the bill, except that he spoke about their general ill-luck, and that they would be able to pay. At St. Joe, he spoke of their losses. He said that they had been playing in ill-luck, but expected to pull out yet.”
John J. Collins testified that he had a business arrangement with defendant from April, 1881, to March 2, 1884, and produced a copy of the contract between .them. Further testified that the bill sued on was for money advanced for the maintenance of the company; that defendant had begun an action against him for an accounting, in which he had alleged that Collins was his partner.
The contract of copartnership introduced in evidence was as follows:
“Partnership agreement made and entered into at the city of St. Louis in the state of Missouri, on the first day of September, A. D. 1881, by and between John J. Collins and Frederick Warde. Witnesseth: Said Collins and Warde hereby mutually agree, and by these presents do enter into partnership for the purposes of carrying on the theatrical business in the United States..
“Said firm shall be known as Collins and Warde, but all business connected with said undertaking or enterprise shall be carried on in the name of John J. Collins.
“Said partnership shall exist, and said business shall be carried on, for a period of four years from the date hereof.
“Said Collins and his heirs shall furnish all the money necessary to conduct said business with success from time to time, as the same shall be required to successfully carry out the objects and purposes of said business and enterprise as his proportion of the capital stock of said concern, and said Warde shall not be *447 compelled to furnish any money for said business' whatever.
“Said Warde shall, as star, so called, contribute his time, energies and talent as an actor during the continuance of this agreement as his share and portion of the capital invested in said business, and he shall be under the control and management of said Collins and his heirs as an actor in said theatrical business during the continuance of this agreement.
“Said Warde shall act and perform in such plays as may be mutually agreed upon by the parties hereto, and in such places and at such times as said Collins and his heirs may select throughout the United States, and also in any other country or province as may be mutually agreed upon by and between the parties hereto.
“Said Warde shallhavefull control and direction of such plays as may be selected as aforesaid to be played and performed by said Warde and the theatre employed by said Collins and his heirs.
“Said Collins and his heirs shall pay all expenses incident to said business, and in no event shall said Warde be compelled to pay any portion thereof. .
“Said Warde as between himself and said Collins shall not bear any portion- of the losses incident to said business, but said Collins and his heirs shall bear all the losses that may be incurred in the carrying on of said business during the existence of this agreement.
‘ ‘It is further agreed that the hotel bills and railroad expenses of the parties hereto, during the theatrical seasons, or during the time each year that shall be set apart by the parties hereto as the theatrical season, and during the time only that said business shall be carried on each year, shall be paid out of the general fund and charged to the general expense of said business and added thereto.
*448 “It is further mutually agreed that the net profits of said business shall be divided each year and at the end of the theatrical season of each year during the continuance of this agreement as follows: The net profits of the business, after paying all expenses, shall, for the first two years, be divided equally between the parties hereto, share and share alike. Of the net profits arising from the third year’s business said Warde is to, and shall, have sixty per cent thereof, and said Collins and his heirs are to have forty per cent thereof. Out of the net profits of the fourth year’s business the said Warde is to, and shall, have seventy per cent thereof, and said Collins and his heirs shall have thirty per cent thereof.
“Said Warde is to be paid each week during the period, each year, thab said business is to be or will be carried on, the sum of fifty dollars, which sum per week shall be deducted ;from the portion of the net profits received or to be received by said Warde from said business, but said Warde is not to be paid said sum of fifty dollars per week for the weeks during any year that said business is not carried on as herein contemplated.
“It is further mutually agreed by and between the parties hereto that the wardrobes and property necessary to carry on said business, except the wardrobe and personal property of Warde, shall be purchased and paid for out of the general receipts of said business and charged to expense account, and at the termination of this agreement all the property of said concern shall be disposed of or divided as may be mutually agreed upon by said Warde and said Collins and his heirs.
“Proper books of account shall be kept, which shall show at all times the receipts and disbursements *449 of said business and a complete and accurate financial record of tbe business of said concern, and said books shall be open to the inspection, at all reasonable times, to the parties hereto. Said books shall be closed each year and the net profits of the business shall be paid over to each party as hereinbefore stipulated and agreed upon.
“ It is further mutually agreed by and between the parties hereto that in the event of the death of said Collins before the termination of this agreement, Mr. George A. Groot, of Cleveland, Ohio, shall, for. and on behalf of the heirs of said Collins, be and he is hereby authorized and empowered to carry out the covenants and agreements of this contract and shall be bound by the same in the same manner as said Collins is and to the same extent; provided, however, said Groot, upon the death of said Collins, shall state in writing in a reasonable and proper time thereafter (not exceeding ten days after said Collins’ death) to said Warde that he will enter upon the performance of said contract, whereupon, after said Warde shall receive such notice, he and said Groot shall agree upon a suitable and proper person to manage the business of said concern for and on behalf of said Warde and heirs of said Collins.
‘ ‘ It is further mutually agreed that in the event of said Groot’s refusal to enter upon the performance of this agreement as herein contemplated, the heirs, executors and administrators of said Collins shall be, and they are hereby, authorized, empowered and required to carry out the provisions of this agreement in the same manner, and as fully and completely as said Collins is by the terms of this agreement, bound to do, in which event said heirs, executors and administrators and said Warde, shall mutually agree upon a suitable and proper person to manage said business for and on *450 behalf of said Warde and heirs of said Collins, according to the stipulations and covenants of this agreement.
“In witness whereof, we have hereunto set our hands and seals as of the day and date above first written. (Signed) “Ebedebick Wabde [seal.]
“John J. Collins.” [seal.]
C. W. Roberts testified: “I know Collins and defendant; was business manager for them in 1882, and so continued for two seasons and a half, that is, up to-1884; I attended to advertising and acted as general manager. Defendant told me that he had a contract with Collins by which he was to receive fifty per cent of the profits and so much a week to meet his expenses. During the season of 1884, and after the company was closed and the enterprise abandoned, I presented a due bill to Collins, which defendant has accepted, and he told me to present it to defendant; that defendant was equally interested and that my claim was equally against the defendant and him. I did so, and defendant told me that he did not have any money. I did this three or four different times; nothing came of it and I finally brought suit against defendant and he settled that suit.”
The defendant introduced the ledger of the printing house and its heading read as follows: “John J. Collins, for Frederick Warde” and was carried forward in the ledger “John J. Collins, Warde.”
Erank Swick testified: “Erom 1880 to 1884, I was superintendent and manager of the Times'Printing House; Mr. Ware was then president of the company and contracted for work and made terms for work. I do not 'recollect that Collins ever stated that he and defendant were partners. I took orders from Collins as manager of the company. I do not know what Mr. Ware or Mr. Bissell had to say to defendant in refer *451 ence to this matter. The printing house looked to Collins for payment.”
W. C. J ones testified: “I was employed by Collins and directed by him to institute the suit brought by Collins and Warde. Had no conversation with anybody else respecting it. Defendant had no connection with it.”
Defendant testified, by deposition, that he was not in St. Louis at the time stated in Mr. Ware’s testimony and denied all the testimony of Ware, but admitted that he had instituted the partnership suit against Collins. Defendant further testified that one of the arrangements was that he was not to be liable for any of the debts of the company and was to receive a salary each week and certain percentage over fifty per cent if any money was made; that he always received his salary but never any profits, as none were made. Defendant admitted that the note taken by plaintiff: from Collins was signed by him, and had never been paid nor negotiated.
The referee filed his report together with the evidence taken by him, to which exceptions were filed, and by the court overruled, and judgment entered upon the report.
It is insisted by the defendant that the referee was not sworn, as required by statute, before proceeding to hear the testimony. The record shows that the referee notified the parties of the time and place at which he would hear the case, and the hearing of said cause was continued along from time to time from November 29, 1887, to June 3, 1893, by both parties proceeding before the referee, without making any objection to his authority, and both parties asking and agreeing to' continuances. No question seems to have been raised as.to the referee’s having been sworn until after the' report was made against the defendant. The referee in his amended or supplemental report states that' *452 “having taken the oath required by law, I caused the parties to come before me, by notice to their attorneys of record.”
In Edwardson v. Garnhart, 56 Mo. 81-86, it was held that the recital in the referee’s report that he had been duly qualified was at least prima facie evidence that he had been sworn as the statute required. We do not think the affidavit of James C. Jones, one of the defendant’s attorneys, states facts' sufficient to overthrow this prima facie case,' especially where, as in this ease, the parties proceeded with the hearing of the case before the referee without objection. Besides, the affidavit of the referee, filed in support of his report, clearly and unequivocally states that he made the requisite affidavit, and that his recollection is clear on that point. This assignment of error will, therefore, be ruled against the defendant.
The second objection is that the finding of the referee is against the evidence and contrary to law. This is the principal question in the case.
The trouble with the argument made by appellant is that ho attempts to apply to this case, authorities which apply only as between partners themselves. The facts necessary to establish a parnership as between a person alleged to be a partner and a third person, who has given credit to the partnership, manifestly differ from the facts necessary to establish a partnership as between the partners themselves. Gates v. Watson, 54 Mo. 591; Campbell v. Dent, 54 Mo. 325.
In this case we have the finding of the referee and the finding of the court approving the report of the referee to the effect that there was sufficient evidence, as between plaintiff and defendant, to establish a partnership between defendant and Collins. We have carefully examined the transcript in this case, and believe that there was sufficient evidence in favor of the *453 plaintiffs upon this issue, and that the referee was justified in so reporting, and that the court was amply warranted in entering judgment confirming the report.
If Warde held himself out as a partner of Collins to the printing company, and as such they dealt with him, he would be held liable, although this court might find that, under the written agreement introduced in evidence by plaintiff between himself and Collins, no partnership among them was in fact created. The testimony of S. S. Bissell and Ware and Roberts on that point would have fully justified the finding in favor of plaintiff by referee.
So, also, the taking part in transactions of partnership business so as to lead to the belief that the party was acting or speaking as a principal, or silent when referred to as a partner; or if he allows himself to be held out as a partner and third parties are induced to give credit on the faith of it, he will be estopped from denying that he is a partner as to such third party or parties, when suit is brought on that assumption.
. Warde permitted himself to be introduced as a partner and never denied it in any manner until after the institution of this suit. The enterprise for which this work was done was known and called the Frederick Warde Combination. Defendant went to the printing office, examined and O. Kd. part of the bills included in the itemized account sued on, and, according to one witness for plaintiff, he agreed to pay the bills when presented to him and Collins. He was the recognized published star of this theatrical combination, by the very work which constitutes the base for a part of the account sued on herein, and he caused suit to be instituted in New York on the theory that he and Collins were partners and that many debts, and among them the one in suit, were outstanding for which he would be liable if a receiver was not appointed to take charge of the *454 copartnership and save same, and husband the assets to pay off and discharge the debts, and verified same by affidavit.
To the introduction of the papers in the suit for the dissolution of copartnership and the appointment of a receiver, instituted by defendant against Collins and others, appellant at the time objected, and assigns that as one of the alleged errors on the part of the referee. It is true the interpretation of the contract by defendant, by the act of instituting suit thereon on a partnership contract, would not be binding on the referee or court called to interpret the' contract, but it was proper as showing what view defendant took of it and how he treated it, as corroborative of what the witness testified he had said to them about being a partner of Collins, and is entitled to be considered as evidence rendering more likely the act of holding out, charged to him before the institution of this suit, and for that reason the referee properly heard it when offered, and no error was committed in so doing.
Appellant seems to contend that, as the referee found that defendant and Collins were partners by reason of the contract introduced in evidence, and admitted to be signed by both parties, the court was in some way bound by that finding; and then devotes most of his brief to a discussion of the essential elements necessary to be shown or incorporated into the contract to constitute a partnership among and between the contracting parties. The referee reported to the court all the, evidence upon which he acted- when he filed his report, and it- was. the right and duty of the trial court to review his finding and correct it if erroneous.
In this court the question is simply whether or not there is evidence to support the judgment reached by *455 the trial court. Wentzville Tobacco Co. v. Walker, 123 Mo. 662. If the evidence in our judgment warrants the finding of the referee and of the circuit court, and the judgment was proper and for the right party, the giving of an improper reason therefor is no grounds for reversing the just finding. Green v. St. Louis, 106 Mo. 454. The way of his journey along the course of his legal examination is not so material as the destination he has reached. The evidence on which he acts the law requires him to preserve and file for the use of the court in its review of his conclusion, but the reasons for his finding and the mental course he pursued in so doing is no proper part of the report and can not be used to militate against his finding, if, from a review of all the evidence, this court thinks the finding is for the right party. His conclusion of law, as applied to the facts found, if erroneous should be set aside by the trial court and the law properly applied to the ascertained fact or facts. But when, as in this case, a finding is made on all the facts for the right party, concluding, for the sake of this case, that a wrong conclusion was reached by referee as to the character of the paper contracts between defendant and Collins, introduced in evidence, still it does not affect the finding, if right in the main, as we think, from a review of the testimony preserved, it clearly was.
The referee, however, in the closing lines of his report, in referring to the ledger kept by the printing company uses this suggestive language: “It shows, however, that credit for the goods purchased was not given to one partner, John J. Collins alone, but to the combination or partnership,” and then proceeds to render judgment for ■ plaintiff against defendant for $8,059.04. Without regard to the conclusion of the referee, as to the scope and character of the contract between Warde and Collins (which we do not decide *456 upon here) the theory upon which this case was tried, judging from the question propounded and the answer elicited, was that defendant "published and proclaimed himself the partner of Collins and permitted himself to be so published, and that from these facts, and plaintiff’s faith therein, defendant’s' liability arose. These are the facts of the case as were disclosed by the testimony filed with the referee’s report and are facts on which the circuit court based its confirmation of the referee’s finding and on which this court will base its judgment, regardless of what we might think the referee-found to be the nature, scope and character of the contract entered into between defendant and Collins.
If defendant and Collins were partners under the contract of agreement read in evidence, he would be liable to plaintiff whether the printing company or its representatives knew of that fact or not at the time the work was done. The existence of the copartnership between defendant and Collins being once established, the ignorance of defendant of the performance of the work by the printing company; or the ignorance of the fact of Warde being a member of the copartnership by the printing company would be a matter of no consequence in the determination of this controversy.
The holding out and proclaiming one’s self a partner, when and where no partnership exists between the parties so announced or held out, makes such parties, as to third persons who have acted on the assumption and announcement, partners, and the assumed and announced copartners are estopped from denying the copartnership relation when suit is brought on the liability or liabilities incurred by reason thereof. Bank v. Schoen, 123 Mo. 650. The doctrine which thus fixes upon parties the responsibility as partners, when in reality there is no copartnership, is nothing more than *457 an illustration of the general principle of estoppel by consent acted upon by another.
Several minor objections were made by appellants, all of which are, we think, without merit. Judgment of circuit court affirmed.
Bba.ce, C. J.; Maceablane, J., and Babclay, J., concur.