JOHN F. RHODES, Receiver, Respondent, v. JOHN S. GUHMAN, Appellant.

Springfield Court of Appeals, May 8, 1911.

1. **PRACTICE: Reference: Report of Referee: Waiver of Time for Filing.** A referee was appointed and directed to report on the first day of the next regular term of court, which was in July following. The first day set by the referee for taking testimony was July 15, after court had convened, upon which day, by consent of both parties, a continuance was taken until the 21st, when the testimony was heard, but no report was filed during the July term. *Held*, that defendant, having appeared on the 15th of July, which was after the date set for filing the report, and having failed to make any objection at that time, by consenting to a continuance of the hearing, waived the question of the right of the referee to take the testimony at the later date and to report at a subsequent term.

2. ———: ———: ———: **Filing Exceptions: Waiver as to Time.** The referee's report was filed on the 10th of January. The defendant's exceptions to the report was filed on the 24th of January. Plaintiff filed no motion to strike out the exceptions, because they were filed out of time, but the record shows that both parties "appeared and the issues made by the pleadings and the report of the referee was submitted to the court for its decision and judgment." *Held*, that plaintiff waived his right to object to the failure of defendant to file his exceptions in time.

3. **ACTIONS: No Recovery in Action Not Pleaded: Bills and Notes.** A petition contained three counts. The first was a straight action on a note, but the second count was an action *ex delicto*, in which it alleged that the note described therein was fictitious and used as a false token, by means of which defendant fraudulently procured money. The third count alleged that the note therein described was a forgery and was used by defendant for the purpose of illegally defrauding the bank, of which plaintiff was receiver. The cause was submitted to a referee, who found for plaintiff upon each count, as if all the counts were straight actions on notes and found that each of the notes was the personal obligation of defendant. Judgment was entered in conformity to the referee's report. *Held*, that as to the second and third counts the judgment was erroneous, for it permitted a recovery as on actions on contract, when the petition stated actions in tort.

Rhodes v. Guhman.

4. ——: ——. The rule is elementary that a plaintiff cannot sue on one cause of action and recover on another, and that the recovery is always dependent on the cause of action stated in the petition.

5. **PRACTICE: Continuance: Diligence.** In his motion for a continuance, defendant set up that he had been unable to get possession of certain papers, which were under the supervision of the circuit court of the city of St. Louis, but it appeared that after filing his answer, he was granted two continuances and that over three months had elapsed after the filing of his answer before he filed his application for a third continuance, which last application the referee overruled, and this ruling is sustained on grounds that defendant failed to show that he had been diligent in attempting to get the desired information.

6. ——: ——: **Presumptions: Courts.** In the absence of any evidence to the contrary, the presumption will be that courts of justice will do justice, and not deny justice, so in an application for a continuance on the grounds that another circuit court had supervision over certain papers, which were necessary as evidence on behalf of defendant, the presumption will be that the circuit court would have permitted defendant, upon the proper application, to have secured under proper safeguards, copies of the papers and where it does not appear that such application was timely and properly made, defendant's application for a continuance was properly overruled, because of a failure to show diligence.

7. ——: ——: **Discretion of Trial Court.** The granting and refusing of a continuance is largely discretionary and before an appellate court will interfere there must be a satisfactory showing that the trial court has abused its discretion.

8. **JUDGMENTS: Disposing of All Counts and Counterclaims.** A final judgment which leaves one or more counts of a petition undisposed of is erroneous, and a judgment must dispose of all the issues presented by the petition, answer and counterclaim.

9. ——: ——: **Reference:** Where a referee in his report stated that the defendant had not paid any part of said notes or either of them and that he had no counterclaim or set-off either at law or in equity, against said notes, this is a sufficient finding against the defendant on his set-off and counterclaim.

10. **REFERENCE: Referee's Finding Same as Special Verdict.** In an action at law the finding of facts of a referee is a special verdict and stands in the place of a finding of a jury, in so far as it determines the facts it will not be disturbed by the appellate court if there is substantial evidence to support it.

11. **BILLS AND NOTES: Possession: Ownership: Presumption.** In an action on a note by a receiver of a bank, the note was shown to be in the possession of the bank to which it was made payable, and this was *held* sufficient prima facie evidence of the bank's ownership when nothing further appeared.

12. ———: **Consideration: Presumption.** A note being a written instrument for the payment of money, imports a consideration and the burden of proving failure or want of consideration was on the defendant.

13. ———: **Credits Made by Owner: Presumptions.** When the payee of a note enters a credit on it, such action on his part is against his own interests and will be prima facie evidence of the payment by the maker, but such presumptions may be rebutted by the testimony of the maker to the contrary.

14. ———: ———: ———: **Inconsistent Position Taken by Debtor.** In an action on a note by the receiver of a bank, the defendant in his answer denied the validity of the note. It appeared by the evidence that certain credits had been endorsed on the note by the bank, and defendant thereupon claimed he was entitled to the amount of these credits, as a counterclaim. *Held*, that having taken this position in the lower court, that he cannot be allowed for the first time in the appellate court to claim that the note was paid by reason of the endorsements of these credits.

Appeal from Butler Circuit Court.—*Hon. J. C. Sheppard*, Judge.

REVERSED AND REMANDED.

*John A. Gloriod* and *Ernest A. Green* for appellant.

(1) The court erred in overruling the defendant's exceptions to the referee's report for the reason that the referee had improperly overruled defendant's application for a continuance. Campbell v. McCaskill, 88 Mo. App. 44; Shoe Co. v. Hilig, 70 Mo. App. 301; Distilling Co. v. Van Frank, 88 Mo. App. 50. (2) The court erred in confirming the referee's report because the referee had no jurisdiction to hear this cause after the time had expired within which he was to file his report. The referee had no jurisdiction to make any order whatever in the premises after the first day of the July term of the circuit court of Butler county. R. S. 1909, sec. 1998;

Rhodes v. Guhman.

Francisco v. Rowland, 14 Mo. App. 600; Hadley v. Benero, 97 Mo. App. 314; State v. Pope, 110 Mo. App. 520; Harding v. Bedoll, 202 Mo. 625. (3) The court and referee erred in any event in not allowing to defendant the credit of $1350.50 appearing on the back of the note sued on in the second count of plaintiff's petition; and they furthermore erred in refusing to render judgment in favor of defendant for said amount, same being the amount improperly charged by the Greenville Bank against the deposit account of defendant and credited on said note of William A. Grow. Bank v. Keith, 85 Mo. App. 409; R. S. 1909, sec. 9989. (4) The court and referee erred in not rendering judgment for the defendant on his third counterclaim for eight thousand dollars, the amount the testimony showed he had on deposit in the Greenville Bank. R. S. 1909, sec. 1810; St. Louis to Use v. Clemens, 36 Mo. 467. (5) Under all the pleadings the judgment in this cause should have been for defendant on the second and third counts of plaintiff's petition. R. S. 1909, secs. 9989, 9991; Dorman v. Hall, 124 Mo. App. 5; Baum v. Stephenson, 133 Mo. App. 187; Joplin v. Hollingshead, 123 Mo. App. 602; Tate v. Railroad, 131 Mo. App. 107; R. S. 1909, sec. 1985; Hammerslough v. Cheatham, 84 Mo. 13; Association v. Obert, 169 Mo. 507; Sain v. Rooney, 125 Mo. App. 176; Short v. Taylor, 137 Mo. 517; Drumm Flato Com. Co. v. Summers, 89 Mo. App. 300; Meyer Bros. v. Ins. Co., 73 Mo. App. 176.

*J. F. Meador* for respondent.

(1) No exceptions were filed to the report of the referee at least, timely exceptions. R. S. 1909, sec. 2012; Gibson v. Jenkins, 97 Mo. App. 27; Reinecke v. Jod, 56 Mo. 386; Gaston v. Kellog, 91 Mo. 104; Dallas v. Brown, 60 Mo. App. 493; Clark v. Kane, 37 Mo. App. 258; Harding v. Bedol, 202 Mo. 625. (2) The finding of the referee is a special verdict, and in so far as it determines the facts, will be accepted as true, where there is substantial evidence to support it. Tufts v. Latshaw, 172

Mo. 359; Bank v. Donnell, 172 Mo. 384; Howard County v. Baker, 119 Mo. 397; Daily v. Timons, 47 Mo. 516; Bissell v. Warde, 129 Mo. 439; Citizens v. McDermott, 109 Mo. App. 306. (3) Questions with respect to the referee's finding of facts in order to be available upon appeal, must be raised by timely exceptions to the referee's report. Tufts v. Latshaw, 172 Mo. 359. (4) The granting of a continuance of a cause rests in the sound discretion of the court. There was no error on the part of the referee in refusing a further continuance to defendant after the 21st day of July, 1909. Carpenter v. Myers, 32 Mo. 213; Leabo v. Goode, 67 Mo. 126; State v. McGuire, 69 Mo. 197; State v. Rainey, 137 Mo. 102; State v. Banks, 118 Mo. 117.

NIXON, P. J.—This was an action commenced in the circuit court of Wayne county in which a change of venue was granted to Butler county and in which action it was sought to recover judgment on three different counts. Upon judgment being rendered for plaintiff, defendant appealed.

The petition is as follows: (Caption omitted).

"Plaintiff states that at the time of the execution of the note sued on and the other instruments named, the Greenville Bank was a corporation duly organized under the banking laws of the State of Missouri and doing a general banking business.

"That on the —— day of ——, 1907, the Secretary of State and acting as Bank Examiner declared said Greenville Bank to be insolvent and reported the same to the Attorney-General of the State of Missouri; that thereupon Herbert S. Hadley, Attorney-General of the State of Missouri, filed a petition in the circuit court of Wayne county, Missouri, alleging that said Greenville Bank was insolvent and asking that a receiver be appointed, and said cause coming on to be heard at chambers, and all and singular the things set forth in said petition being heard by the judge of said court at chambers,

did in all things sustain the same and did appoint John F. Rhodes as receiver of said Greenville Bank, who did duly qualify as such receiver and has been ever since and now is the duly qualified and acting receiver of said Greenville Bank.

"Plaintiff for cause of action states that defendant on the 22d day of September, 1906, made, executed and delivered to the Greenville Bank his certain promissory note of the following tenor, to-wit:

$1500.                    GREENVILLE, MO. Sept. 22, 1906.

'Six months after date I promise to pay to the order of the Greenville Bank, fifteen hundred dollars, at Greenville Bank, for value received, negotiable and payable without defalcation or discount, and with interest from maturity at the rate of eight per cent per annum; it is also agreed that all signers and endorsers of this note, either as principal or security, demand protest and notice of protest waived. It is further agreed that if this note is collected by suit or through an attorney, ten per cent additional shall be added to cover costs of collection.

(Signed.)                    'JOHN S. GUHMAN.'

"Which said note is herewith filed and marked Exhibit 'A.'

"Plaintiff states that said note was delivered to him as a part of the assets of the Greenville Bank that no part of said note has been paid, but that the whole amount of said note, together with interest, remains due and unpaid, all of which will fully appear by reference to a copy of said note, which is herewith filed and marked Exhibit 'A.'

"Wherefore plaintiff prays judgment for fifteen hundred dollars, with interest at eight per cent from the maturity of said note, and also for ten per cent as attorney's fees, as in said note provided.

"Plaintiff for another and further cause of action states that the defendant made, or caused to be made,

what purported to be a promissory note which was made for the intent and purpose of cheating and defrauding the Greenville Bank. Which said pretended note is and was of the following tenor, to-wit:

'1500.                    ST. LOUIS, MO., Oct. 22, 1906.

"Six months after date I promise to pay to the order of National Trust Realty Institution, fifteen hundred dollars, for value received, negotiable and payable without defalcation or discount, with interest at the rate of six per cent per annum from date, payable at any bank in Missouri.

(Signed.)                    'WILLIAM A. CROW.'

"Which said note is herewith filed and marked Exhibit 'B.'

"Plaintiff charges and avers that said note was falsely and fraudulently made for the purpose of cheating and defrauding the Greenville Bank, and in order to carry out the nefarious designs of J. S. Guhman, that he endorsed said note as follows:

"National Realty Trust Institution,
        By John S. Guhman, President."

"Plaintiff avers that there is no such company or corporation as the National Trust Institution, but that name is and was used by John S. Guhman to deceive the unsuspected. Plaintiff avers that the note described was made and executed by the defendant to cheat and defraud the Greenville Bank. And that said pretended and fraudulent note was by said defendant delivered to the Greenville Bank as the note of the pretended National Realty Trust Institution. That said John S. Guhman is the so-called Realty Trust Institution; that by virtue of said pretended note and false token which was delivered by the defendant to the Greenville Bank, the said defendant procured from the said Greenville Bank the sum of fifteen hundred dollars.

"Wherefore, plaintiff prays judgment for said sum of fifteen hundred dollars, together with interest at the

rate of six per cent per annum from Oct. 22, 1906, and for costs.

"Plaintiff for another cause of action states that the defendant with intent to cheat and defraud the Greenville Bank, made or caused to be made a purported note of the following tenor, to-wit:

'$1500.                    GREENVILLE, MO., Feb. 20, 1907.

'Six months after date I promise to pay to the order of the Greenville Bank five hundred dollars, for value received, negotiable and payable without defalcation or discount, and with interest from maturity at the rate of eight per cent per annum. It is also agreed that all signers and endorsers of this note, either as principal or security, demand protest and notice of protest waived. It is further agreed that if this note is collected by suit or through an attorney, ten per cent additional shall be added to cover costs of collection.

(Signed.)                    'DAVID F. WILLIAMS,
                             'POTTSVILLE, PA.
                             'JAMES ENLOE,
                             'GREENVILLE MO.'

"A copy of said pretended note is herewith filed and marked Exhibit 'C.'

"That said note was not made and executed by David F. Williams, but was made and executed by John S. Guhman, defendant herein, for the purpose of unlawfully and illegally defrauding the Greenville Bank; that said John S. Guhman deposited said note in said Greenville Bank and falsely and fraudulently obtained on said pretended note from said Greenville Bank in the sum of five hundred dollars.

"Wherefore, plaintiff states that defendant owes and stands indebted to him as receiver the sum of five hundred dollars, for which he prays judgment with interest at six per cent from February 20, 1907, and for costs."

The amended answer to this petition is, in part, as follows: (Caption omitted.)

Rhodes v. Guhman.

"Now comes the above-named defendant and by leave of court files this his amended answed herein.

"And for said amended answer to the first cause of action of plaintiff herein, the defendant denies each and every allegation in the plaintiff's petition contained, except such as is hereinafter expressly admitted.

"Further answering, this defendant avers that while it is true that he signed his name to said note attached to plaintiff's petition and marked Exhibit 'A,' and left the same with said Greenville Bank to be discounted for his benefit, and the proceeds placed to his credit, yet, defendant avers that the said bank never did discount said note and never did place the proceeds thereof to his credit, and defendant avers that he never did receive one cent, nor any other consideration for said note, and that said note was therefore wholly without consideration, and that the same is not now, and never was, binding upon defendant, in the hands of this plaintiff.

"Further answering, and by way of counterclaim, defendant avers that on or about the 22d day of March, 1907, he had on deposit in said Greenville Bank, large and divers sums of money, and that on or about that date the said Greenville Bank credited on the note hereinbefore mentioned and marked Exhibit 'A' in plaintiff's petition, the sum of fourteen hundred and four dollars, which sum it deducted from the amount which defendant had on deposit in said Greenville Bank, and which sum it charged against the defendant's deposit account; defendant avers that said Greenville Bank had no right to deduct said sum from the deposit account of defendant, nor to charge same against said deposit account, as said note was wholly without consideration as hereinbefore set forth and as defendant had not authorized said Greenville Bank to charge said note against his deposit account.

"Wherefore, defendant asks judgment for the sum of fourteen hundred and four dollars, the amount which

said Greenville Bank wrongfully deducted from said deposit account, and for his costs herein expended.

"And for another and further defense to the causes of action stated by plaintiff and by way of counterclaim to plaintiff's causes of action herein, defendant says and avers that on or about the 4th day of April, 1907, this defendant had deposited to his credit in the Greenville Bank divers sums of money, to the amount of eight thousand dollars ($8000), and that before the commencement of this action, and at the time said Greenville Bank went into the hands of this plaintiff as receiver, said Greenville Bank was indebted to the defendant on account of moneys deposited in said bank to said amount of eight thousand dollars, which said moneys had been deposited by defendant in said Greenville Bank, and which said moneys were to the credit of this defendant in said Greenville Bank on said 4th day of April, 1907, and that said moneys have never been paid to defendant, and that this plaintiff as receiver of said Greenville Bank is still justly indebted to defendant in said sum of eight thousand dollars, on account of said moneys deposited by defendant in said Greenville Bank.

"Wherefore, defendant prays judgment on this his counterclaim against plaintiff in the sum of eight thousand dollars, and for his costs."

## OPINION.

I. On the 21st day of April, 1909, the plaintiff filed a motion for the appointment of a referee in this cause which motion was sustained, and by agreement of parties, Hon. N. A. Mozley was appointed referee. He proceeded to take testimony and made a report, and that portion of his report which it is now necessary to consider is as follows:

"Upon said note dated September 22, 1906, there is now due the sum of $1720.09. Upon said note dated

Rhodes v. Guhman.

February 20, 1907, there is now due the sum of $600.03, and upon said note dated October 22, 1906, there is now due the sum of $1918.12. I therefore find that said notes above described and each of them are the personal obligations of defendant, John S. Guhman, and that he is legally liable for the payment of said notes to the plaintiff as Receiver as aforesaid of the said Greenville Bank, and that said defendant has not paid any part of said notes or either of them and that he had no counterclaim or set-off either at law or in equity against said notes. I therefore recommend that judgment be rendered in favor of plaintiff on said note dated September 22, 1906, in the sum of $1,720.09, and that judgment be rendered for the plaintiff on said note dated February 20, 1907, in the sum of $600.03, and the judgment be rendered for the plaintiff on said note dated October 22, 1906, in the sum of $1918.12, and that plaintiff recover of the said defendant the costs in this behalf to be assessed at $10.90."

Defendant filed exceptions to this report which were overruled and judgment was entered for the amounts recommended by the referee.

At the time of the appointment of the referee, the order of the court directed him to report on the first day of the next regular term of court. The next regular term of court was in July following. The first day set by the referee for the taking of testimony was July 15th. Then a continuance was taken until the 21st, when the testimony was taken, but no report was filed during the July term and the testimony was taken after the first day of that term. The defendant, at the hearing on the 21st day of July, objected to the referee proceeding on the ground that the time within which he was to report had expired and that his authority to hear testimony in this case had become extinct. The difficulty of this position is that the report of the referee shows that at the first day set for the hearing—July

15th—both parties appeared and consented that the hearing might be continued until the 21st, and in the exceptions filed by defendant to the report of the referee, here, this statement of the referee in his report is not challenged. Therefore, it must be taken as true; and since defendant appeared and consented to a continuance of the hearing, he has waived the question of the right of the referee to take the testimony at that time.

The report of the referee was not filed until the 10th day of January, 1910. The defendant's exceptions to the report were filed on the 24th day of January, 1910, the day before the court had set the case for hearing, and respondent now insists that appellant has no standing in this court because the exceptions to the report were not filed within four days after the report was filed. The record in this case shows that as to this question the respondent is in the same position that the appellant is in as to questioning the right of the referee to take the testimony on July 21st, for the judgment recites: "Now come the parties hereto, plaintiff and defendant, by their respective attorneys, and all and singular the issues herein made by the pleadings and the report of the referee heretofore filed in this court on the 10th day of January, 1910, were submitted to the court for its decision and judgment, . . ." From this it will be seen that at the time the matter came up for final hearing the parties both appeared and the issues made by the pleadings and the report of the referee were submitted to the court for its decision and judgment. After having submitted the matter to the court, without moving to strike out the exceptions, the respondent cannot now complain that the exceptions were filed out of time. We conclude that one technicality offsets the other technicality. See, in this connection, the opinion in the companion case to this of John F. Rhodes, Receiver, v. John S. Guhman and H. N. Barckers, delivered by this court this day.

II. An examination of the petition in this case discloses that the first count is upon a promissory note in the sum of $1500 dated September 22, 1906, executed by John S. Guhman, defendant, payable to the order of the Greenville Bank; that the second count in plaintiff's petition is an action in tort, in which it is substantially alleged that William A. Grow executed on October 22, 1906, a note for the sum of $1500, payable to the order of the National Realty Trust Institution, and it is charged in this count of the petition that the note was falsely and fraudulently made for the purpose of cheating and defrauding the Greenville Bank, and that in order to carry out certain nefarious designs of the defendant, Guhman, made a certain endorsement on the said note; and said count further avers that there was no such company or corporation as the National Realty Trust Institution, but that the name was used by Guhman to deceive the unsuspecting, and for the purpose of cheating and defrauding the Greenville Bank, and that to carry out the said fraudulent purposes, the defendant delivered the same to the Greenville Bank as the note of the National Realty Trust Institution; and said count further alleged that said Guhman is the so-called National Realty Trust Institution; and that by virtue of said pretended note and false token the defendant procured from the said Greenville Bank the sum of $1500 without consideration. It is apparent upon the most cursory reading of this second count of the petition that it is not an action on the note, *ex contractu,* but an action *ex delicto,* in which it is alleged that the note was fictitious and used as a false token by means of which the defendant fraudulently procured from the Greenville Bank the sum of $1500. The third count in plaintiff's petition stated that the defendant, with intent to cheat and defraud the Greenville Bank, made or caused to be made a purported note for $500, due six months after date, payable to the Greenville Bank, executed by David F. Williams and James Enloe; that the same was

Rhodes v. Guhman.

a forgery and was not executed by the persons whose names were signed to the note, but by Guhman, the defendant, for the purpose of illegally defrauding the Greenville Bank and that he deposited the said note with the Greenville Bank and by means of such note falsely and fraudulently obtained on said note from the Greenville Bank the sum of $500. It will be seen that this count pleads an action in tort and not an action on the note itself and that the note was merely used as a false token or a fraudulent contrivance by means of which that amount of money was fraudulently obtained from the Greenville Bank.

The finding of the referee was that there was due on the first of said notes the sum of $1720.09, upon the second note there was due the sum of $600.03, and upon the third note there was due the sum of $1918.12; and the further finding was made by the referee that each of the notes was the personal obligation of John S. Guhman, and that he was liable for the payment of the said notes, and the referee recommended that judgment be entered on said notes for the respective amounts found. The judgment was entered in conformity to the report of the referee, that the defendant was indebted to the plaintiff on the three promissory notes, namely, on the note dated September 26, 1906, in the sum of $1720.09, on the note dated February 20, 1907, in the sum of $600.03, and on the note dated October 22, 1906, in the sum of $1918.12, making a total of $4238.24.

It will thus be seen that the second and third counts in plaintiff's petition state actions of tort, and by the finding of the referee and the judgment of the court entered thereon, he was allowed to recover as on an action of contract for the amounts due on said notes. The rule is elementary that a plaintiff cannot sue on one cause of action and recover on another and that recovery is always dependent upon the cause of action stated in the petition. Enumeration of authorities in support of this principle is wholly unnecessary. The

plainiff, in the second and third counts of his petition, having charged that defendant was liable upon a tort, could not recover on a contract.

III.   Appellant has further assigned as error the overruling of his application before the referee for a continuance; that by such action of the referee appellant was deprived of the use at the trial of certain documentary evidence vitally necessary to his defense.

The defendant filed his answer to this action on April 21, 1909.  On June 21, 1909, by agreement, the case was continued until July 15, 1909.  On that date, the parties were present and again by consent of parties the case was continued until July 21, 1909.  On that day the parties appeared before the referee and the appellant asked a further continuance of the case and filed affidavits in support of his application.  In his affidavit the appellant stated, among other things, that the following evidence was material to his defense:  A certified copy of the Bank Examiner's report at the time said bank went into the hands of a receiver showing credits on notes in suit; deposit books and deposit slips, together with the checks payable to the Greenville Bank, showing deposits made by this defendant in such bank; also certificate of incorporation of the National Realty Trust Institution, as well as other incorporation papers pertaining to said suit; also correspondence between this defendant and the officers of the Greenville Bank.  The affidavit of H. A. Loevy, defendant's attorney, was also filed.  By such affidavits it was made to appear that three indictments were presented and found against the defendant by the St. Louis grand jury within three weeks  before the filing of the affidavits, and that at the instance of the said grand jury the clerk of the circuit court in and for said city issued a subpoena *duces tecum* to the Mercantile Trust Company and A. V. Reyburn, superintendent of its safe deposit vault, directing them to produce before said grand jury the contents of the

two safe deposit boxes in the safe deposit vault of the said trust company rented by the Berlin Stock Company and the Star Vinegar Works, corporations; that the said trust company and the said Reyburn made a return into said court to the command of said subpoena *duces tecum* praying among other things that the said subpoena be quashed for the reason that said court had no authority or jurisdiction to issue the same, whereupon said court did order that the boxes be sealed and access thereto denied all persons until the question of the validity of said subpoena is determined, and that said matter is still undetermined and will not be, as affiant is informed by his counsel and therefore believes, for some time, by reason of the important constitutional questions involved.

The affidavits fail to show any proper diligence by the defendant to procure such documents to be used as evidence in the trial of his case before the referee. He states that he had endeavored to get the same into his custody in that on or about the 24th day of June, 1909, he filed a return in the circuit court of the city of St. Louis denying the right of the said court to possession of the said documents, and through his attorneys has on numerous occasions endeavored to get said court to permit him access to said papers and to have said papers returned to him, but that until the present time he has been unable to get the circuit court of the city of St. Louis to take any action in the premises and has been unable to get such court to allow him access to the said papers. We think there can be no question from the condition of the record and the defendant's own statement that he has utterly failed to show a degree of diligence such as the law under such circumstances requires. His answer was filed in this case before the referee on April 21, 1909, and the matter was pending from that time until the 21st day of June, a period of two months during which time not a single step was taken in any way to prepare for the trial. On June 21st, on his appli-

cation and by agreement of the parties, he was indulged three weeks longer and until the 15th day of July to obtain the desired documents. At that time, still not having procured his papers in the action, he was granted until the 21st day of July, 1909. Over three months had elapsed after the filing of his answer before he filed his application for a third continuance. The learned referee stated that the application was overruled because there had been no diligence shown by the defendant in attempting to get the desired evidence. We think the facts in this record abundantly confirm this conclusion. On his own showing, the only effort that he made in any way was that on the 24th day of June, 1909, he filed a return in the St. Louis circuit court denying the right of the court to possession of the documents and demanded through his attorneys possession of the same. His proceeding in the St. Louis court was had, as would seem from his record, to protect himself against the indictments pending and that his application was made for the purpose of securing these documents in order that they might be used upon the trial of the indictments that were pending against him. He seems to have made no proper application to the circuit court of the city of St. Louis, having these documents in its possession, by petition or otherwise, asking that he might have an inspection of the documents or be allowed to have copies of the same to be used in the trial of the present case; and we cannot presume, in the absence of any evidence to the contrary, that the circuit court would have denied such application if it had been timely and properly made, nor that it would have refused to allow defendant, under proper safeguards, to have secured copies of the evidence to be used in this case. We must presume that a court of justice will do justice and not deny justice. Again, defendant gave no notice to take depositions, he issued no subpoenas or other process in any way to secure the testimony of those in charge of the safe deposit boxes containing the desired papers, and we are not to pre-

sume that the officers in charge of the same, upon a proper showing, would have refused to allow him, under reasonable safeguards, to have made copies of such documents. Not only this, but the affidavit itself discloses that the desired evidence could not be procured until certain constitutional questions were determined; and further, that the documents had been sealed up by order of the circuit court of St. Louis in order that they might be used, presumably by the state, as evidence on the trial of the indictments against the defendant, and hence would not be released from custody until those cases were tried and determined which might occupy a period of a year or more.

Ordinarily, appellate courts will not interfere with the discretion of an inferior court in refusing to grant a continuance. The granting and refusing of a continuance is largely discretionary and there must be a satisfactory showing that the trial court has abused its discretion, and the ruling of the trial court is entitled to every intendment in its favor. Under the facts in this case we are satisfied that the referee was guilty of no abuse of discretion in overruling defendant's application for a continuance.

IV. Appellant assigns as error that the judgment in this case does not refer to the counterclaim in any way and wholly fails to dispose of the issues presented by such counterclaim. The principle of law is well-recognized by our courts that a final judgment that leaves one or more counts of the petition undisposed of is erroneous, and that a judgment must dispose of all the issues presented by the petition, answer, and counterclaim. As we have stated, the referee's report, among other things, recites: "And that the said defendant has not paid any part of said notes or either of them, and that he has no counterclaim or set-off either at law or in equity against said notes." This is a finding against the defendant on his set-offs and counterclaim. The judgment entered

upon the referee's finding adopts the referee's report and gives judgment for the amounts as recommended by the referee. It is true, the judgment of the trial court makes no specific reference to the counterclaim, but it does substantially adopt the finding of the referee who denied the defendant's right to a counterclaim. We think that the judgment unquestionably disposed of the defendant's counterclaim and is not subject to the objection made.

V. Appellant also contends that under the evidence in this case the judgment should have been rendered by the referee allowing the counterclaim and set-offs mentioned in defendant's answer. It will be remembered that this is an action at law and that the reference was what is called a compulsory one. Hence the finding of the referee is a special verdict and stands in the place of the finding of a jury insofar as it determines the facts and will not be disturbed by the appellate court if there is substantial evidence to support it. [Tufts v. Latshaw, 172 Mo. 359, 72 S. W. 679; Citizen's Nat. Bank v. Donnell, 172 Mo. 384, 72 S. W. 925; Howard County v. Baker, 119 Mo. 397, 24 S. W. 200; Daly v. Timon, 47 Mo. 516; Bissell v. Warde, 129 Mo. 439, 31 S. W. 928; Citizen's Coal Min. Co. v. McDermott, 109 Mo. App. 306, 84 S. W. 459.]

At the trial of this case the plaintiff unquestionably made a prima facie case. The execution of the note itself was admitted by the answer. At the time the assets were taken over by the receiver of the Greenville Bank, the note was in the possession of the bank to which it was made payable, and this, at least, was sufficient prima facie evidence of the bank's ownership when nothing further appeared. The note, being a written instrument for the payment of money, imported a consideration, and the burden of proving failure of consideration was on the defendant. [Sec. 2774, R. S. 1909.] Furthermore, the letters of the defendant himself admitted the execution of the note and promised to pay it, requesting the re-

ceiver to send his notes to a bank in St. Louis in order that he might exchange them for his certificates of deposit. Jos. Hanna was the cashier of the institution during its existence and during the time the defendant was the promoter of the bank and assisted in its organization, although he was not an officer. Hanna as a witness testified that Guhman executed the note sued on in the first count of plaintiff's petition to the bank and that he received as consideration therefor the bank's certificate of deposit for the amount of the note. Under these circumstances, unquestionably the bank made out a prima facie case.

VI. But the appellant contends that the court and referee erred in refusing to allow defendant a credit of $1404 which it is claimed appears on the back of the note sued on in the first count of plaintiff's petition. It appears from the evidence in this case that there was endorsed across the back of said note the following words and figures:

"Paid cash $600.00
"Feb. 11-97

$500.00
$225.00
_____

825.00

_____

"Bal.        96.00"

These credits were undoubtedly entered while the note was in possession of the bank. When the payee of a note enters a credit on it, such action on his part is against his own interest and will be evidence prima facie establishing a payment by the maker. [Haver v. Schwyhart, 48 Mo. App. 50.] But in this case the answer of the defendant sets up the fact that no payments were ever made upon the note with his consent, but that the cashier of the bank unlawfully appropriated his deposit to the payment of the note; that the note itself was with-

out validity, there having been a failure of consideration. While an endorsement of the payment of interest on a note is prima facie evidence that the payment was made by the maker, such a presumption is rebutted by the testimony of the maker to the contrary. [Bell v. Campbell, 123 Mo. 1, 25 S. W. 359.] The defendant in this case, having denied by his answer the validity of the note and having claimed that he was entitled to the amount of the payments as a counterclaim, he cannot now be allowed for the first time in an appellate court to claim that the note was paid by reason of the endorsement of these credits. The attempt to make the credit on the note of $1404 (as appellant figures it) serve the double duty of paying off the note and operating as a set-off is certainly a shrewd financial operation. As has been said, the answer alleges that the defendant executed the note and left it with the bank to be disconted but avers that it never was discounted. When defendant was called upon by his own testimony to support this allegation of his answer, he stated that he executed the note to accommodate Dr. Enloe, the president, and Jos. Hanna, as they had a large amount of money borrowed and they got him to put up the $1500 note on the promise that they would give defendant ten shares of the capital stock of the bank for it, and that they gave him Certificate No. 29 for such shares and he put up the note according to agreement. That under coercion of the State Bank Examiner he surrendered up such stock and they agreed to surrender up his note which they never did. How this evidence tends in any way to support the answer it would take a shrewd calculation to ascertain. But that is not all. Prior to April 15, 1907, the plaintiff had written to the reciver of the bank asking the latter to send his notes to a bank in St. Louis, saying that he would pay them off in installments with certificates of deposit, and on April 15, 1907, defendant wrote a letter to the receiver of the Greenville Bank in which he said: "I have several times called at the Third National Bank and could not find the

notes and today I called and the cashier had them in his desk with special instructions that was, to pay the whole amount in a lump sum, about $3750. Now what I want is to pay as I get the certificates, say in installment plan and when the certificate is delivered then I expect to get a note in return." It will be seen by this letter he distinctly acknowledges his liability upon his note and proposes to pay it in his certificates of deposit. The receiver testified concerning his conversation with defedant about the exchange of the notes for certificates of deposit: "Q. Mr. Rhoades, I believe you stated in your direct examination yesterday that you had a conversation with the defendant, John S. Guhman, about an exchange of these notes for the certificates of deposit? A. Yes, sir, over the telephone. Q. Now in your conversation was there anything said about the credits that appear upon these two notes? A. No, sir. Q. And when you forwarded these notes to the Third National Bank there was no money accompanying the notes, to be paid to him in the exchange for the certificates of deposit? A. No, sir." On cross-examination of the defendant, the following took place: "Q. Why didn't you tell Mr. Rhodes that you had given up the certificates of stock to Mr. Enloe, and that Mr. Enloe had promised to cancel the notes—Enloe and Hanna—that you had paid the notes, they ought to be canceled and you didn't owe them? Why didn't you do that to Mr. Rhodes then? A. Well, I don't know what conversation I had with Mr. Rhodes. I was so worried when I was at Greenville that I didn't half the time know what I was talking about. Q. Well, you were in St. Louis then, talking to Mr. Rhodes over the 'phone. There was nobody there to worry you? A. I was worried along ever since. Q. You don't get so badly worried—so badly worried— that you can't tell the truth about facts, do you? A. To the best of my knowledge is all I told Mr. Rhodes was to send up the notes so—could see what they are. Q. Why did you offer to pay them then by installments, and

then now you say you didn't owe them? A. Because I was so worried. I would do anything to get out of the trouble, because I heard so many reports, and because there—I didn't know for a time where I was sitting— their charges against me. They swore out a warrant I cashed four thousand dollars—". We think this testimony speaks for itself and needs no comment. We find no satisfactory evidence that the cashier of the bank at any time withdrew any portion of the defendant's bank deposits and applied them as credits on his note.

VII. Appellant further assigns as error that the court and referee erred in not rendering judgment on the third counterclaim for $8000. In regard to this counterclaim defendant testified that he had this amount on deposit at the time the bank went into the receiver's hands. In rebuttal, the plaintiff introduced a certain book called a day-book containing a list of checks deposited by defendant which shows that on this account the defendant was debtor to the bank instead of being its creditor. This rebuttal evidence further tended to show that defendant was depositor No. 30 as shown by the customers' ledger and a daily balance book and the entries in these bank books tended to prove that defendant was debtor to the bank in the sum of $89.92. As to these matters, the books and evidence were before the referee; his opportunity to reach a correct conclusion was therefore superior to ours, and there being substantial evidence to support his findings, and appellate court is unable to disturb them. The fact that the cashier kept an account of the defendant's check deposits in a socalled day-book, separate and apart from the customer's ledger and balance book, wherein was entered the defendant's genuine and legitimate deposits tends to cast suspicion upon the whole transaction and bears out the impression that the whole matter was a framed-up affair for the benefit of the defendant, and to deceive the creditors of the bank in the event of an investigation. Indeed,

the whole manner of keeping accounts and the method of dealing between the defendant and the bank and its officers shows that the whole transaction was honeycombed with crooked designs. A careful review of the evidence in many places shows vermiculations of fraud, and over the whole record of the defendant's transactions with the insolvent bank is visible the slimy trail of dishonesty.

The decision of the referee as to the first count of plaintiff's petition was amply supported by the evidence. The judgment of the trial court on the first note, described in the first count of plaintiff's petition, is affirmed. The judgment of the trial court as to the second and third counts in plaintiff's petition is reversed and the case is remanded with directions to allow either party on retrial of the second or third counts to introduce additional evidence if they so desire. All concur.